UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRYAN C. McINTIRE, an individual,

      Plaintiff,

   v.

SUNRISE SPECIALTY COMPANY, a California corporation,

      Defendant.
_____/

NO. CIV. S-11-2495 LKK/CKD

O R D E R

Plaintiff Bryan C. McIntire alleges that defendant Sunrise Specialty Co. infringed his toilet bowl design patent.[1] Plaintiff now moves for summary judgment on the ground that no reasonable juror could fail to find that defendant's bowl infringes his

---

[1] "Design" patents are granted pursuant to 35 U.S.C. § 171: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor." In contrast, "utility" patents are granted pursuant to 35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor"). See Int'l Seaway Trading Corp. V. Walgreens Corp., 589 F.3d 1233, 1238 (Fed. Cir. 2009) (comparing requirements for design versus utility patents).

1

design.  Defendant cross-moves for summary judgment on the ground that no reasonable juror could find that its bowl infringes plaintiff's patented design.

For the reasons that follow, the court concludes that under the applicable infringement and summary judgment standards, no reasonable juror could find infringement here.  Plaintiff limited the scope of his patent to the drawings of the patent, and defendant's bowl does not embody those drawings.  Accordingly, defendant's motion for summary judgment will be granted, and plaintiff's will be denied.

**I.   BACKGROUND**

**A.   Facts Leading to the Alleged Infringement.**[2]

Plaintiff Bryan C. McIntire is the owner and operator of Mac the Antique Plumber, a wholesale and retail seller of antique plumbing fixtures, including toilet bowls. [Proposed] Statement of Uncontroverted Facts in Support of Plaintiff Bryan C. McIntire's Motion for Summary Judgment ("PSUF") (ECF No. 50-2) ¶ 1.  Plaintiff submitted a toilet bowl design to the U.S. Patent and Trademark Office, and on December 26, 2006, he was issued Design Patent No. D524,254 (the "'D254 Patent" or the "claimed design").  PSUF ¶ 5; See Complaint (ECF No. 1), Exh. A (Patent and Drawings).

Thereafter, plaintiff McIntire sold toilet bowls embodying the design of the 'D254 Patent to defendant Sunrise.  PSUF ¶¶ 12 & 13.

---

[2] Many of the facts noted here would only be relevant to a claim of willfullness. Given that the court concludes that summary judgment on behalf of defendant is appropriate, they are only set out to provide a factual context for the suit.

2

1  Defendant Sunrise then sold those bowls to its customers.  PSUF
2  ¶ 13.  Plaintiff also sold to defendant, however, bowls that did
3  not include the beads around the rim, but that otherwise were the
4  same as those embodying the 'D254 Patent.  PSUF ¶ 13.
5       Robert Weinstein is the President of defendant Sunrise.
6  Defendant Sunrise Specialty Company's Statement OF Uncontroverted
7  Facts ("DSUF") (ECF No. 52) ¶ 1.  In 2009, Weinstein showed
8  plaintiff McIntire a toilet bowl that Weinstein said had been
9  manufactured in China. Declaration of Plaintiff Bryan C. McIntire
10 in Support of Motion for Summary Judgment (ECF No. 50-3)
11 ("B. McIntire Decl.") ¶ 11.[3]  Weinstein advised McIntire that he
12 had sent one of plaintiff McIntire's bowls to a manufacturer in
13 China to see if it could make a sample, and that the bowl Weinstein
14 showed to McIntire was the result.  B. McIntire Decl. ¶ 11.
15 McIntire told defendant Weinstein that McIntire's design was
16 protected by a patent, a fact that Weinstein acknowledged.  B.
17 McIntire Decl. ¶ 12.
18      Several months after these events, defendant stopped ordering
19 bowls from plaintiff, with its last order being dated June 30,

---

[3] Defendant "denies" everything in this paragraph. Defendant Sunrise Specialty Company's Response to Plaintiff's Proposed Statement of Uncontroverted Facts Supporting his Motion for Summary Judgment ("Def. Resp. to PSUF") (ECF No. 60) ¶¶ 15-19. However, the evidence defendant offers to put them in dispute – "excerpt of Interrogatory Answer # 14, Fischer Declaration, ¶5, Exhibit C" – does not dispute any of these assertions.  Therefore, the assertions are undisputed.  They may be material because they go the issue of damages.  See Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc., 682 F.3d 1003, 1005 (Fed. Cir. 2012) ("A finding of willful infringement allows an award of enhanced damages under 35 U.S.C. § 284"), cert. denied, 133 S. Ct. 932 (2013).

3

2008. PSUF ¶¶ 20-21. The bowls from that last order were shipped to defendant on or about February 12, 2009.[4] PSUF ¶ 21. However, in or around October 2010, a new Sunrise catalogue featured the same pictures of the bowls that had been used when McIntire was supplying the bowls to Sunrise between 2006 and 2009. PSUF ¶ 23.[5]

**B.  The 'D254 Patent.**

This court has construed plaintiff's design patent as follows:

> The ornamental design for a toilet bowl, as shown and described by US Patent D534,254 S, and its seven (7) included drawings.

ECF No. 46 (claim construction). The patent drawings are attached to this Order as Exhibit A. The 'D254 Patent contains several design features which, in the court's determination, are integral to the overall design of the claimed patent, as discussed below. These features can be seen clearly from the patent drawings

---

[4] Defendant denies this, but offers <u>no</u> evidence to dispute B. McIntire's declaration. <u>See</u> Def. Resp. to PSUF ¶ 21. What is disputed is the <u>reason</u> Sunrise stopped ordering bowls from plaintiff. Plaintiff insinuates that it was because defendant planned to manufacture cheap imitations of his patented bowls in China. B. McIntire Decl. ¶¶ 11-13. Defendant asserts that plaintiff's bowls no longer met certain California regulatory requirements. <u>See</u> Defendant's Response to Plaintiff's Interrogatories - Set One ¶ 14. The dispute may be material in that it seems to address the willfulness of the alleged infringement.

[5] Defendant denies this assertion, citing the Declaration of Robert Weinstein in Support of Sunrise Specialty Company's Motion for Summary Judgment ("R. Weinstein Decl.") (ECF No. 51-3) ¶¶ 4 & 6. However, the declaration does not dispute plaintiff's assertion that the catalogue re-printed the same toilet bowl pictures that it featured when defendant was known to be selling plaintiff's patented design. The Declaration asserts that the Sunrise model does not infringe the patent, without addressing which image was used in the catalogue.

4

themselves.[6]

### i. The beads.

The 'D254 Patent contains a prominent and distinctive row of beads that nearly encircles the bowl just beneath the rim, and ends just before the plumbing opening in the back. Complaint, Exh. A (ECF No. 1) ("'D254 Patent"); see DSUF ¶ 13. These beads, which sit atop and are highlighted by an underlining bar, are prominently displayed in six out of the seven patent drawings. See 'D254 Patent at 9-11 (Figs. 1-5, 7).[7]

### ii. The stepped-down pedestal.

The claimed design includes a stepped-down, key-shaped pedestal, upon which the rest of the toilet bowl sits. 'D254 Patent; see DSUF ¶ 7. The stepped-down feature of the design is clearly depicted in five of the seven patent drawings. See 'D254 Patent at 9-10 (Figs. 1-5).[8]

////

---

[6] The court identifies here only those features that are prominent, easily identified from the drawings and plainly are a part of the overall design. Other features may well distinguish the design, such as the curved, compound, backward "S" shape of the bowl. 'D254 Patent; DSUF ¶ 9. However, these other features are more subtle, and on this motion for summary judgment, the court cannot say that they are a part of the overall design beyond any reasonable dispute.

[7] The beads are hidden in the seventh drawing, because the bowl's rim hides them in the "top plan view." See 'D254 Patent at 11 (Fig. 6).

[8] The feature is not discernible in the "top plan view" and the "bottom plan view" because it is hidden by the rim or by the bottom of the pedestal itself. See 'D254 Patent at 11 (Figs. 6 & 7).

5

### iii. The "Adam's Apple."

The "throat" of the claimed design – the column that extends from the beads to the pedestal when the bowl is viewed head-on – contains an "Adam's Apple," a bulge that protrudes prominently from the top of the throat. 'D254 Patent; DSUF ¶ 8. The Adam's Apple is so prominent that it is visible beyond the rim of the toilet in five of the seven drawings, even when the rim or the pedestal hides the rest of the throat (in the "top plan view" or the "bottom plan view"). See 'D254 Patent at 9-11 (Figs. 1-3, 6 & 7);[9] DSUF ¶ 8.

### iv.  The throat.

The 'D254's throat itself has vertical sides (excluding its rounded top), when viewed head-on. 'D254 Patent. That is, when it is viewed head-on, there is no visible bulge in the throat and the sides are not angled. See 'D254 at 10 (Fig. 4). The throat is prominently depicted in four of the seven drawings, although its vertical sides can only be identified from the head-on view. See 'D254 at 9-10 (Figs. 1-4).

### C.  The Accused Toilet Bowl.

The accused bowl is called the "Sunrise Bowl." DSUF ¶ 4. It is undisputed that Sunrise has sold these bowls to its customers, without plaintiff's consent. PSUF ¶ 22; Def. Resp. to PSUF ¶ 22. There are several undisputed design differences between the claimed

---

[9] The Adam's Apple cannot be discerned in the head-on and rear view because it protrudes forward, that is, in the head-on direction. It does not bulge to either side, and accordingly cannot be seen when viewed head-on or from the rear. See 'D254 at 10 (Figs. 4 & 5).

6

design and the accused bowl. The accused bowl does not have beads on the rim on top of the bowl, as does the claimed design. DSUF ¶ 6. The accused bowl does not have a pedestal with a stepped descent, which the patented bowl does. DSUF ¶ 7. The Adam's Apple of the accused bowl's throat does not extend beyond the top circle of the bowl (when viewed from above), which the Adam's Apple of the patented bowl does. DSUF ¶ 8.[10]

**II. STANDARDS**

    **A. Infringement.**

A design patent is infringed if "the patented design, or any colorable imitation thereof," is applied to "any article of manufacture for the purpose of sale." 35 U.S.C. § 289. Thus, "a design patent is infringed by the 'unauthorized manufacture, use, or sale of the article embodying the patented design or any colorable imitation thereof.'" Arminak and Associates, Inc. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1319 (Fed. Cir. 2007), cert. denied, 553 U.S. 1102 (2008), quoting Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116-17 (Fed. Cir. 1998).[11] The statute's use of the term "colorable imitation"

---

[10] The accused bowl does, however, have a vertical-sided throat, when viewed head-on, as does the patented bowl. See 'D254 Patent; Plaintiff's Motion for Summary Judgment (ECF No. 50-1) at 13 (drawing opposite Fig. 4).

[11] Arminak and Goodyear, along with many other cases, were overruled, in part, by Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en banc), cert. denied, 556 U.S. ____, 129 S. Ct. 1917 (2009), but only to the extent that they applied both the "ordinary observer" test, described below, as well as the "point of novelty test." Egyptian Goddess established that only the "ordinary observer" should be used. This court accordingly cites

7

recognizes that "minor changes in a design are often readily made without changing its overall appearance." <u>Goodyear</u> at 162 F.3d. at 1117.

Obviously, the claimed design does not cover the universe of designs that remotely resemble it. Rather, as an initial matter, a design patentee limits the scope of his patent by including features that give the overall design a distinctive ornamental appearance. See <u>Elmer v. ICC Fabricating, Inc.</u>, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (patentee included in its drawings certain features that gave the design "a distinct ornamental appearance," and "thus effectively limited the scope of its patent claim by including those features in it"). Thus, the initial step in any comparison of designs is a determination of whether the accused bowl is even within the limitation on scope that the patentee has imposed, through his patent drawings.

If the patentee's limitations on his patent do not plainly exclude the accused bowl, however, the infringement inquiry then requires the fact-finder to compare the whole of the claimed design "to the design of the accused device." <u>OddzOn Products, Inc. V. Just Toys, Inc.</u>, 122 F.3d 1396, 1404 (Fed. Cir. 1997). The comparison "requires the fact-finder to determine whether the patented design as a whole is substantially similar in appearance to the accused bowl." <u>Id.</u>, at 1405; <u>Hall v. Bed Bath & Beyond, Inc.</u>, 705 F.3d 1357, 1363 (Fed. Cir. 2013) ("infringement of a

---

them freely in respect to the portions of their holdings that are not dependent on the "point of novelty" issue.

8

design patent is based on the design as a whole").

In making this comparison, the fact-finder puts itself into the place of an "ordinary observer." Hall, 705 F.3d at 1363. The "ordinary observer" is not an expert; he is an observer "of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." Gorham Mfg. Co. v. White, 81 U.S. 511, 528 (1871); Arminak, 501 F.3d at 1324 (the "ordinary observer" is the purchaser of the item displaying the claimed design). However, he must not be too ordinary; rather he must be "familiar with the prior art designs." Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1295 (Fed. Cir. 2010).

The designs are "substantially similar" if, viewing the overall appearance of the designs, an "ordinary observer"

> would be deceived by the similarity between the claimed and accused bowls, "inducing him to purchase one supposing it to be the other."

Egyptian Goddess, 543 F.3d at 683, quoting Gorham, 81 U.S. at 528;[12] OddzOn Products, 122 F.3d at 1405 ("There can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar"); Richardson, 597 F.3d at 1295 ("ordinary observer" test).[13]

---

[12] Egyptian Goddess is the key authority in determining infringement of a design patent. It appears to be the last en banc decision of the Federal Circuit on the topic, and discusses the pertinent issues at length.

[13] Before the en banc decision in Egyptian Goddess, the courts used the "point of novelty" test, in addition to the "ordinary observer" test. Under the "point of novelty" test, "'no matter how

9

**B.   Summary Judgment.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that they are 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936 (9th Cir. 2011) (en banc) (same), cert. denied, 132 S. Ct. 1566 (2012).

---

similar two items look, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art."'" Egyptian Goddess, Inc. v. Swisa, Inc., 498 F.3d 1354, 1357 (Fed. Cir. 2007), overruled, 543 F.3d 665 (2008) (en banc). In other words, the court first identified a "point of novelty" that distinguished the claimed design from the prior art. If that "point of novelty" was not present in the accused bowl, then there could be no infringement.

The en banc court in Egyptian Goddess expressly did away with the "point of novelty" test. Nevertheless, the main legal argument of defendant in this case is that the court must apply the "point of novelty" test. See Defendant's Motion for Summary Judgment (ECF No. 51-1) at 8-9. Plaintiff naturally makes much of this. However, defendant goes on to ignore that test and instead argues that there is no infringement under the "ordinary observer" test. See id., at 9-17. Accordingly, the court will overlook defendant's supposed reliance upon the "point of novelty" test.

10

1    Under summary judgment practice, the moving party bears the
2 initial responsibility of informing the district court of the basis
3 for its motion, and "citing to particular parts of the materials in
4 the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact
5 cannot be ... disputed."  Fed. R. Civ. P. 56(c)(1); <u>Nursing Home
6 Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp.
7 Securities Litigation)</u>, 627 F.3d 376, 387 (9th Cir. 2010) ("The
8 moving party initially bears the burden of proving the absence of
9 a genuine issue of material fact"), <u>citing</u> <u>Celotex v. Catrett</u>, 477
10 U.S. 317, 323 (1986).

11    If the moving party meets its initial responsibility, the
12 burden then shifts to the non-moving party to establish the
13 existence of a genuine issue of material fact.  <u>Matsushita Elec.
14 Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986);
15 <u>Oracle Corp.</u>, 627 F.3d at 387 (where the moving party meets its
16 burden, "the burden then shifts to the non-moving party to
17 designate specific facts demonstrating the existence of genuine
18 issues for trial").  In doing so, the non-moving party may not rely
19 upon the denials of its pleadings, but must tender evidence of
20 specific facts in the form of affidavits and/or other admissible
21 materials in support of its contention that the dispute exists.
22 Fed. R. Civ. P. 56(c)(1)(A).

23    "In evaluating the evidence to determine whether there is a
24 genuine issue of fact," the court draws "all reasonable inferences
25 supported by the evidence in favor of the non-moving party."
26 <u>Walls</u>, 653 F.3d at 966.  Because the court only considers

inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

At oral argument, plaintiff's counsel argued, for the first time, that Egyptian Goddess had changed the summary judgment standard for patent infringement cases. The court disagrees.

It is true that before Egyptian Goddess, the Federal Circuit applied the normal Rule 56(a) standard in design patent infringement cases where, as here, the question was whether the "ordinary observer" would confuse the design of the accused article with the patented design. See Arminak, 501 F.3d at 1319. ("We review a grant of summary judgment de novo, reviewing the record and drawing all reasonable inferences in the nonmovant's favor to determine whether there is a genuine issue as to any material fact"). However, after Egyptian Goddess, the Federal Circuit continued to apply the same standard. See International Seaway Trading Corp. v. Walgreens Corp., 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("Because we cannot say that these differences are insignificant as a matter of law, a genuine issue of material fact exists as to whether the designs would be viewed as substantially

similar in the eyes of the ordinary observer armed with the knowledge of the prior art"). Moreover, <u>Egyptian Goddess</u> itself does not state that it was modifying the summary judgment standard in any way, nor does it identify any authority that would empower it to do so.

**III. ANALYSIS**

    **A.   Patent Infringement.**

As discussed above, the initial determination is whether the accused bowl is even within the limitations on scope plaintiff imposed through his patent drawings. That is because the claimed patent is for a design, and thus by its nature it has no scope beyond the drawings of the patent itself. See <u>In re Mann</u>, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings").

The court concludes that the claimed design is for a toilet with encircling beads, a stepped-down pedestal, a protruding Adam's Apple,[14] and (as viewed head-on), a vertical "throat" column. These design features are so prominent in the patent drawings, and so plainly comprise the design of the toilet, that the court concludes that no reasonable juror could find that these features are simply flourishes standing apart from the toilet design. Rather, any reasonable juror could only find that these features <u>comprise</u> the

---

[14] By "protruding," the court refers to its characteristic of protruding beyond the rim of the toilet, not merely its prominence.

13

toilet design.[15]  That is, products which do not include these elements are simply not within the scope of plaintiff's patent, and therefore cannot infringe it.

In a case raising similar issues, the Federal Circuit explained its conclusion as follows:

> Turning first to claim construction, the '620 patent claims, with emphasis added, the "ornamental design for a vehicle top sign holder, <u>as shown and described</u>" in the patent.  Significantly, the only design "shown and described" in the '620 patent is a vehicle sign that includes, inter alia, triangular vertical ribs and an upper protrusion.  Each of the patent's six drawing figures shows a sign having these features, which give the sign a distinctive ornamental appearance.  No other design is disclosed or suggested in the '620 patent.  If, as HTH now contends, the vertical ribs and upper protrusion were functional, not ornamental, features, HTH could have omitted these features from its patent application drawings.  HTH did not do so, however, and thus effectively limited the scope of its patent claim by including those features in it.  Thus, because no other design is disclosed in the '620 patent, we interpret the claim as being limited to a design that includes among its ornamental features triangular vertical ribs and an upper protrusion.

<u>Elmer</u>, 67 F.3d at 1577  (citation omitted) (emphasis in text). Similarly, because the 'D254 Patent discloses no other design, the court interprets the claim as being limited to a design that includes among its ornamental features: encircling beads around the rim; a stepped-down, key-shaped pedestal; a vertical throat; and a protruding Adam's Apple.

---

[15] The complete absence of encircling beads from any prior art designs – other than plaintiff's own "Old Bowl" – would put any ordinary observer on notice that the beads are not incidental or irrelevant flourishes, but a design feature intended to set this toilet apart from all others.

14

1    By way of comparison, issues like the count of the beads, the
2 width of the throat, the degree to which the Adam's Apple protrudes
3 (that is, how far it protrudes beyond the rim), the stubbiness or
4 elongation of the key-shaped pedestal, and the extent of the bowl's
5 curvature (as opposed to the fact of curvature), are the types of
6 variances that perhaps could fall within the "colorable imitation"
7 of the claimed patent.

8    Plaintiff has submitted documents that compare: (1) the 'D254
9 Patent drawings with photos of the accused bowl (ECF No. 50-10);
10 and (2) photos of the embodiment of the 'D254 Patent with photos of
11 the accused bowl (ECF No. 50-11). Defendant does not dispute that
12 these drawings and photos accurately depict the claimed and accused
13 bowls.

14    The photos show that the accused bowl has no beads around its
15 rim, that it has a pedestal without the stepped-down design
16 (although it is key-shaped), and that its Adams Apple does not
17 protrude beyond the rim of the toilet.[16]  Plaintiff's patent
18 drawings, on the other hand, do not disclose a bead-less toilet,
19 nor one without a stepped-down pedestal, nor one without a
20 protruding Adam's Apple.

21    Neither side has argued that plaintiff was somehow precluded
22 from disclosing alternate designs that would have covered
23 defendant's accused bowl, yet he chose not to include them in his
24 ////

---

26    [16] However, the accused bowl does have a vertical throat.

15

design patent.[17]  Alternate depictions of each of these could have shown, for example: rims without beads, or with varying numbers of beads; throats without Adam's Apples or with varying levels of prominence and protrusion; and pedestals with more or fewer, or no, steps.[18]

By omitting these alternate designs, plaintiff limited the coverage of his patent to the features shown in the drawings. Elmer, 67 F.3d at 1577.  The accused bowl does not contain the beads, the stepped-down pedestal, or the protruding Adam's Apple, all of which limit the scope of the claimed patent.[19]  Accordingly, the accused bowl cannot be found to infringe the claimed patent.

**B.   Other Considerations**

   **1.   Design as a Whole.**

Plaintiff argues that the fact-finder must consider the design

---

[17] Any number of considerations could have influenced this decision (for example, plaintiff may have believed that a design that omitted or varied the bead count, the protruding Adam's Apple, and/or the stepped-down pedestal was not patentable), and there is no need for the court to speculate on what they were.

[18] A design patent in another case on this court's docket depicts alternate configurations in just this way.  See Sofpool v. Kmart, 2:10-cv-3333, ECF No. 24 (E.D. Cal.) (depicting two, four, and an "indefinite repetition" of "strut assemblies").

[19] The mere prominence of the Adam's Apple is not the issue here.  The accused bowl could well infringe the patent (if this were the only difference) even if it were simply a matter of whether it copied a "prominent" Adam's Apple, since reasonable jurors could differ on whether the feature was as prominent as the Adam's Apple in the claimed design.  However, the patent drawings clearly show that the Adam's Apple protrudes beyond the rim of the toilet.  The patent drawings highlight this aspect of the design in the above and below perspectives.  In the accused bowl, the Adam's Apple does not protrude beyond the rim.

16

as a whole, rather than focusing on individual design elements. See OddzOn, 122 F.3d at 1404. However, the design elements that give the toilet its "distinctive ornamental design" must be considered, and must be present in the accused bowl, or there can be no infringement. See Elmer, 67 F.3d at 1577. By their nature – they _give_ the toilet its distinctive ornamental design – the beads, the protruding Adam's Apple, and the stepped-down pedestal relate to the overall design. Accordingly, the absence of these critical design features from the accused bowl is fatal to plaintiff's infringement claim.

**2. Prior Art.**

The court has not thoroughly described the prior art submitted by the parties, referring to it only in passing. That is because the patent drawings on their face make clear that the claimed design does not encompass defendant's bead-less toilet design in which the protruding Adam's Apple and the stepped-down pedestal are absent:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, as required by Gorham. In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art.

Egyptian Goddess, 543 F.3d at 678. However, an examination of the prior art submitted by the parties only highlights the design features, since they are present in some prior art, and absent in

17

1 others.[20]

**C. Patent Invalidity**.

As an alternative ground in opposing to plaintiff's summary judgment motion, defendant briefly asserts that plaintiff's patent is invalid for obviousness. Because the court denies plaintiffs' summary judgment motion on the grounds that defendant has not infringed the patent, it need not consider this alternate argument. The court notes that defendant has not sought a declaration of invalidity in its own summary judgment motion.

**IV. CONCLUSION**

For the foregoing reasons:

1. Defendant's motion for summary judgment (ECF No. 51), is **GRANTED**;

2. Plaintiff's motion for summary judgment (ECF No. 50), is **DENIED;**

3. The Clerk is directed to **ENTER JUDGMENT** for defendant, and to close this case.

IT IS SO ORDERED.

DATED:  May 6, 2013.

```
                    LAWRENCE K. KARLTON
                    SENIOR JUDGE
                    UNITED STATES DISTRICT COURT
```

---

[20] For example, as noted, there is no prior art containing encircling beads, other than plaintiff's own "Old Bowl." The prior art shows that the relative prominence of the Adam's Apple is used in several designs to distinguish them from each other. The prior art also shows that a stepped-down pedestal is generally not included in the design, appearing (prominently, in any event), in only one prior art design.